# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CRAIG LADARRELL VERGE, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. PWG-15-3750 |
| RICHARD E. MILLER and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * * | |
| Respondents. | * | |

\*\*\*

## MEMORANDUM OPINION

Petitioner Craig Ladarrell Verge, an inmate housed at Western Correctional Institute ("WCI"), has filed a Petition for Writ of Habeas Corpus with the Court. Pet., ECF No. 1. Respondents have answered and argue that the Petition should be dismissed on the merits, Ans., ECF No. 9, in response to which Verge has filed a Reply, ECF No. 10. An evidentiary hearing is not necessary *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; Loc. R. 105.6 (D. Md.); *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). Verge also filed a Motion to Appoint Counsel. ECF No. 12. Under Rule 8(c) of the Federal Rules Governing § 2254 Habeas Corpus cases, "[i]f an evidentiary hearing is required the judge shall appoint counsel for a petitioner who qualifies for the appointment of counsel." Having determined that an evidentiary hearing is not necessary, Verge's Motion to Appoint Counsel also is denied. The Petition for Writ of Habeas Corpus shall be denied on the merits, and a certificate of appealability shall not issue.

## Background

Verge "'snatched the money' from the cash register of Dollar Tree, a commercial establishment" on September 29, 2009; he was arrested on February 19, 2010 and charged with robbery with a deadly weapon. Post-Conviction Mem. Op. 1–2 (Balt. Cty. Cir. Ct. Jan. 7, 2014), Ans. Ex. 3, ECF No. 9-3; Warrant Application Aff., ECF No. 1-10. Trial originally was set for July 30, 2010, postponed four times, and ultimately set for May 10, 2011. Pet. 11.

On May 10, 2011, Verge's trial counsel[1] encouraged him to plead guilty because he was facing a possible sentence of life without the possibility of parole, and Verge entered a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), to the charge of robbery with a deadly weapon in the Circuit Court for Baltimore City. *Id*. That day, the court held a guilty plea hearing and sentenced Verge to eighteen years' incarceration, but did not exclude the possibility of parole. Guilty Plea Hr'g Tr., Ans. Ex. 8, ECF No. 9-8; Post-Conviction Mem. Op. 1.

In support of the guilty plea, the State provided the following narrative describing the evidence it would rely upon if Verge had opted to proceed to trial:

> [O]n September 29, 2009 at approximately 8:12 p.m. at 6812 Reisterstown Road Dollar Tree Store in Baltimore City, Officer Cross, responded for an armed commercial robbery call. She met with the victim, Ms. Nicole Terry, who advised that a man came up behind her register and put a hard metal silver object to her back stating shut up. The suspect reached into the register which was open and took approximately $320.00 U.S. currency without permission.
>
> The suspect dropped some of the money, then picked it up before leaving the store. Ms. Terry called 911 and reported the robbery. Detectives responded. Ms. Terry advised the suspect had also dropped a popcorn bag before committing the robbery. The popcorn bag was processed by Crime Lab. Latent prints were recovered from the bag. Store video surveillance showed the suspect entering the store wearing a Yankees cap and a dark, long-sleeved t-shirt.

---

[1] Verge's counsel, Ahmet Hisim, was a panel attorney provided to Verge through the Maryland Office of the Public Defender.

> Detective Savage posted wanted flyers in and around the location. Savage received information that Defendant Craig Verge . . . was the suspect who committed the robbery. Latent prints that were recovered off the popcorn bag matched Defendant's right thumb and left ring finger.
>
> Detective Savage compared the images from the store surveillance to the Defendant's MVA photo and observed a likeness. Mr. Verge was arrested on February 19th, 2010. A search and seizure warrant was executed on . . . the home where Mr. Verge was living at the time.
>
> Detectives recovered a Yankees cap, a marked Echo brand dark in color long-sleeved t-shirt which actually had a white rectangular design on the front which was the shirt worn by the suspect . . . as well as silk nylon caps, a loaded silver 38 caliber revolver, ammunition, among other property.
>
> Later that day, Defendant Verge waived Miranda, gave a taped confession to the robbery, though he denied using a handgun or any weapon. As part of the confession, Defendant Verge signed a still surveillance photo writing, "that's me."

*Id*. 64:13– 66:13. One month later, Verge requested a re-interrogation, waived his *Miranda* rights again, and recanted previous statements he made indicating that other people, including the victim, were involved in the robbery. *Id*. at 66:14–19.

## Claims

Verge claims that he is entitled to federal habeas corpus relief because (1) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not timely disclosing exculpatory information; (2) trial counsel was ineffective for (A) failing to investigate the case adequately and (B) failing to advise him properly with regard to pleading guilty; (3) his state-law right to a speedy trial was violated; and (4) an agreement he had with a police officer was breached. Pet. 8–14. He had raised all of these issues in his petition for post-conviction relief and supplements thereto in state court. *See* Post-Conviction Mem. Op. 1; Supp. Pets. Post-Conviction Relief, Resp't's Opp'n Ex. 2, ECF No. 9-2. When the state court denied that petition as it pertained to these claims, Verge sought leave to appeal, raising all but the *Brady* issue. Appl. for Leave to

Appeal Post-Conviction Mem. Op., Ans. Ex. 4, ECF No. 9-4. The Maryland Court of Special Appeals denied the application for leave to appeal by unreported opinion issued on August 12, 2015. Md. Ct. Spec. App. Op., Ans. Ex. 5, ECF No. 9-5.

### **Standard of Review**

The federal habeas statute at 28 U.S.C. § 2254 sets forth a highly deferential standard for evaluating state-court rulings. *See Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet" and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)(internal quotation marks and citations omitted); *see White v Woodall,* __ U.S.__, __, 134 S. Ct. 1697, 1702 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: "1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of that decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. (internal quotation marks omitted) (quoting *Williams*, 529 U.S. at 410).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

## Analysis

### Brady Claim

"[T]he suppression by the prosecution of evidence favorable to an accused upon request

5

violates due process where the evidence is material either to guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In order to prevail on a *Brady* claim, the petioner must establish that the evidence at issue is both favorable to the defense and that the unavailability of the evidence calls into question the result of the trial. *United States v. Bagley*, 473 U.S. 667, 678 (1985).

In his *Brady* claim, Verge claims that the State knew for months prior to the trial date that there was a criminal investigation focusing on the reporting officer in his case, who was fired or forced to resign under threat of criminal prosecution for stealing, filing a false report, and perjury, but the State failed to inform him until the day of trial. Pet. 8. Verge asserts that, had this information been made available to him, it "would have thrown the whole case in disarray" and the charges would likely have been dropped or at least reduced. *Id*.

Although Verge raised this claim in his petition for post-conviction relief, *see* Post-Conviction Mem. Op.; Supp. Pets. Post-Conviction Relief, he abandoned it on appeal, *see* Appl. for Leave to Appeal Post-Conviction Mem. Op. Where, as here, a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings (including by failing to raise the claim on appeal of a denial of post-conviction relief, as Verge failed to do) or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); *Whitley v. Bair*, 802 F.2d 1487, 1500 (4th Cir. 1986) (failure to raise claim on appeal of denial of post-conviction relief); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D.

Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). This claim therefore is procedurally defaulted. *See Murch*, 409 U. S. at 46; *Whitley*, 802 F.2d at 1500.

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, i.e. the conviction of one who is actually innocent. *See Murray*, 477 U.S. at 495-96; *Schlup v. Delo*, 513 U.S. 298, 314 (1995); *Breard*, 134 F.3d at 620. Cause consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488).

Here, Verge cannot show cause because he raised the *Brady* claim in state court and gave no explanation for his failure to raise it on appeal. Additionally, failure to consider Verge's *Brady* claim would not result in a fundamental miscarriage of justice. Significantly, even if the disclosure of the evidence was delayed, the prosecution ultimately disclosed it on the day of trial, and the responding officer's credibility was addressed during the guilty plea proceeding. The State's Attorney explained that Officer Cross was not going to be called as a witness had the case gone to trial; that the victim herself would be testifying; and that the written report of the responding officer was inadmissible hearsay. Guilty Plea Tr. 58, 60–61, 68. The State's Attorney also explained that the offense report prepared by Cross had been disclosed to the defense. *Id*. at 59:13-60:14. The trial court also made clear that any discrepancies in statements from the victim taken by police officers involved would have been subject to cross-examination had the case gone to trial. *Id*. at 69:2-6. Clearly, Verge knew of the evidence in time to have used it on cross-examination. Thus, Verge has not shown that it would be a miscarriage of

justice not to consider this claim, *see Murray*, 447 U.S. at 495-96, and he cannot make the requisite showing that the evidence was unavailable, let alone that the unavailability of the evidence to him calls into question the result of the trial. *See Bagley*, 473 U.S. at 678.

Indeed, there was no trial: Verge entered an *Alford* plea. When a criminal defendant enters a plea of guilty, he waives many of his rights that otherwise would apply to a full trial on the merits. As the Supreme Court observed:

> A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment.
> 
> ****
> 
> Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers.

*Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (citations omitted). Notwithstanding all of Verge's assertions that the police engaged in misconduct and the prosecution withheld evidence beneficial to the defense, an allegation that is not supported by the record, he freely and voluntarily entered a plea of guilty. Consequently, any failures in the State's burden of proof were waived, as were any procedural irregularities in discovery, if they occurred. *See Boykin*, 395 U.S. at 242-43. Verge is not entitled to federal habeas relief on this claim.

*Ineffective Assistance of Counsel*

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A

strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors." *McKesson v. Shearin*, No. AW-07-2461, 2009 WL 2884762, at \*8 (D. Md. Sept. 2, 2009) (citing *Strickland*, 466 U.S. at 696).

   *1. Trial Preparation*

Verge alleges that his trial counsel, Ahmet Hisim, did not adequately prepare for trial because he refused to investigate the matter concerning the reporting officer and his forced resignation "along with discrepancy with witnesses statements." Pet. 8-9. He also claims that one of his trial counsel (he does not specify which) refused to investigate the lead detective, Alan Savage, and the State's Attorney, whom he asserts breached an agreement they made with him. *Id*. at 9. Verge also insists that his attorney knew that he had not used a handgun in the offense, and moreover knew that his niece, who turned him in for the offense, had described to Savage a handgun in the house where she and Verge lived. *Id.* at 10-11. According to Verge, that description was included in the affidavit for his arrest, as the description of a gun used in the commission of the crime. *Id.* Verge also states that one of his attorneys refused to investigate the disappearance of a surveillance video that, according to Verge, would prove that he did not use a weapon to take the money from the store. *Id*. Verge further claims that Hisim knew his Michigan conviction was "only bank robbery in name" and that in reality it "considered theft by deception, and non-violent," but did nothing with that information. *Id*. at 10. He claims that his attorney said that the jury would resolve all of these issues. *Id*. at 11.

The post-conviction court found Verge's claim that his attorney failed to investigate the case and prepare for trial was unsupported by any evidence to rebut a presumption that counsel

took necessary steps to prepare for trial. Post-Conviction Mem. Op. 6. In addition, the transcript of the guilty plea proceeding refutes any notion that trial counsel was not prepared for trial; counsel was asked directly by the trial judge if he was ready and willing to proceed to trial and counsel affirmed that he was. *Id*. at 7; *see also* Guilty Plea Tr. 42. Verge's claim that one or more of his attorneys failed to prepare adequately for trial is without merit and is not a basis for federal habeas relief.

### 2. *Counsel's Duty of Loyalty*

Verge also alleges that his counsel owed him a duty of loyalty that was breached when, after Verge had waited for almost a year and a half for trial, he told Verge on the day of trial that he should plead guilty because he was facing a life sentence. Pet. 9-10. He states that counsel was obliged to give him this advice sooner. Verge asserts that when his trial date turned into a plea hearing, he "was so hurt and felt betrayed that he didn't know what to do." *Id*. at 9. Verge claims that Hisim advised Verge's wife to tell Verge to take the plea deal or he would get a life sentence. *Id*. at 9–10. According to Verge, his wife then told him that if he did not take the plea, she and their children would never see him a free man again. *Id*. Verge asserts that his trial counsel forced him into entering a guilty plea by refusing to address viable issues. *Id*. at 11. He claims that counsel was either ineffective or colluded with the State. *Id*.

Here, the trial court engaged in a lengthy colloquy with Verge to insure that he understood the rights he was waiving by entering an *Alford* plea. Guilty Plea Tr. 43–64. In response to Verge's post-conviction claim that trial counsel coerced him into pleading guilty through threats ("you better take this deal") and gestures toward Verge's wife who was in the courtroom gallery, the post-conviction court noted that it took the "extraordinary step of reviewing the video and audio record of the guilty plea proceedings." Post-Conviction Mem. Op.

10

11. The court then concluded that there was no evidence that trial counsel threatened Verge or "made menacing gestures that would lead him to believe that had no other choice but to plead guilty." *Id*. In denying post-conviction relief, the court stated that:

> [Verge's] bold and unsupported allegations regarding his attorney's advice, gestures, and duress create precisely the type of impermissible 'after-the-fact assessment' that a reviewing court must dismiss under *Strickland* in favor of 'the deference that must be accorded to counsel's judgment and perspective when the plea was negotiated, offered, and entered.' [*Strickland*, 466 U.S.] at 742.
>
> Furthermore, this court is unwilling to grant post-conviction relief to a fickle individual whom, absent a legitimate claim of error or deficiency by prosecutors, defense attorneys, or the court, has made a voluntary and informed decision regarding how he wishes to legally proceed only to later change his mind. Post-conviction relief is an avenue which allows an individual legitimately harmed by specific errors or deficiencies in the judicial process to challenge legal rulings against him. [Verge] demonstrated during the course of the post-conviction hearing a tendency to make a voluntary and informed decision only to later regret that decision, claim legal error, and seek relief through judicial means.

*Id*. at 12-13. The post-conviction court concluded that Verge's allegations of attorney deception lacked credibility and that he failed to meet his burden of proof to establish that counsel was deficient. *Id*. at 13. This Court finds the post-conviction court's analysis and conclusion to be a reasonable application of well-established law.

Additionally, the post-conviction court observed that what an attorney owes his clients under the duty of loyalty, as defined by Maryland Rule 16-812 and Maryland Rules of Professional Conduct 1.7 and 1.8, is a duty to represent them without any conflict of interest. Post-Conviction Mem. Op. 8. Verge's claim does not include an allegation that counsel had a conflict of interest; rather, his claim simply involves counsel's change of position that proceeding to trial was not the best strategy to pursue. *Id*. Thus, it does not qualify as a breach of the duty of loyalty. Moreover, the court correctly observed that this change of position "does

11

not amount to an act that can be viewed by this court as one outside the realm of reasonable professional judgment in light of the circumstances." *Id*. Verge is not entitled to federal habeas corpus relief on the claims regarding ineffective assistance of counsel with respect to his guilty plea.

### 3. Ineffective Assistance of Appellate Counsel

Insofar as Verge claims that Hisim purposely sabotaged his application for leave to appeal the guilty plea proceedings by filing it without an argument, that claim is denied as moot because he raised it in his post-conviction proceedings, and the appellate court granted relief on that ground. Post-Conviction Pet. 6. Thereafter, with permission, Verge filed a belated application for leave to appeal his guilty plea, alleging that his guilty plea was defective because the trial judge interjected herself into the plea bargaining process. Appl. for Leave to Appeal Guilty Plea, Answer, Ex. 6, ECF No. 9-6. The application for leave to appeal was summarily denied in the same unreported opinion denying the application for leave to appeal the denial of post-conviction relief. *See* Md. Ct. Spec. App. Op., Answer, Ex. 5, ECF No. 9-5.

Now, Verge claims that his post-conviction attorney, Eric Schattl, refused to "develop" any viable issues for appeal. Pet. 10. He further claims that Schattl did not tell him that after the issues were presented to the court, Verge would need to enter into evidence the documents he had to support his claims. *Id*. An application for leave to appeal the denial of post-conviction relief is an appeal on the record before the post-conviction court. *See* Md. Rule 8-131(a) (issues not raised in trial court are waived on appeal). To the extent that Schattl did not advise Verge to enter evidence with the Maryland Court of Special Appeals, his failure to do so does not constitute ineffective assistance of counsel. Under *Strickland* there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

12

been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The failure to make a frivolous motion or to make ethically improper arguments, does not establish that there was an unprofessional error, nor is there even a remote possibility that the result of the trial would have been different had the motion been made. *See Horne v. Peyton*, 356 F.2d 631 (4th Cir. 1966) (fact that counsel could have done more is insufficient for reversal absent any showing of harmful consequences). In addition, it does not appear that Verge presented this claim to the state court for its review. When filing a federal habeas corpus application under 28 U.S.C. § 2254, a petitioner must show that all of his claims have been presented to the state courts. 28 U.S.C. § 2254(b) and (c); *see also Preiser v. Rodriguez*, 411 U.S. 475, 491 (1973). To the extent Verge has a viable means to raise this claim in state court, it is dismissed without prejudice.

*Speedy Trial Right*

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." Despite the breadth of the amendment's language, some delay of trial is constitutionally permissible. *See Doggett v. United States*, 505 U.S. 647, 651 (1992). In order to determine if Petitioner's Sixth Amendment right to a speedy trial was violated, four factors must be considered: (1) the length of the delay, (2) the reason for the delay, (3) the timeliness of the assertion of the right, and (4) the actual prejudice suffered as a result of the delay. *See Barker v. Wingo*, 407 U.S. 514, 532 (1972). Where the delay results from negligence and not bad faith (for which relief is "virtually automatic"), it nonetheless may merit relief even if "the accused cannot demonstrate exactly how it has prejudiced him." *Doggett,* 505 U.S. at 656-57. Prejudicial effect of a delay includes oppressive pretrial incarceration, anxiety of defendant, and, most importantly, impairment of the ability to prepare a defense. *See Moore v. Arizona*, 414 U.S. 25 (1973). None of the factors considered with regard to speedy trial rights is

13

> either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Barker*, 505 U.S. at 533 (footnote omitted).

Verge was arrested on February 19, 2010, and trial was set for July 30, 2010, postponed to November 18, 2010 because the prosecutor had a second trial scheduled for the same date, postponed again to April 27, 2011 because there was not an available courtroom, and then postponed to April 29, 2011 and finally May 10, 2011 to see if the parties could reach a plea agreement. Pet. 11; Post-Conviction Mem. Op. 10.

Verge relies upon the holding in *State v. Hicks*, 403 A.2d 356 (1979), guaranteeing Maryland State criminal defendants a right to a trial within 180 days of the date of arrest unless good cause for postponement is found. Although Verge relies on state law for his claim, the Supreme Court has recognized the same speedy trial right, which the Sixth Amendment protects. *See Doggett,* 505 U.S. at 651. Verge's trial date was approximately nine months after the speedy trial period. Scheduling conflicts and attempts to reach an agreement do not amount to either bad faith or negligence. And, most significantly, Verge cannot show any prejudice. He has not shown any impairment to his ability to prepare a defense; indeed, he pleaded guilty. And, although he waited about nine months longer than the speedy trial period, he pled guilty and was sentenced to eighteen years' incarceration, and his pretrial incarceration will be credited toward that time. Thus, he was not prejudiced by the delay and is not entitled to federal habeas relief on this ground.

*Breach of Agreement*

The post-conviction court considered Verge's claim that the investigating officer, Detective Savage, breached an agreement he made with Verge that, in exchange for information regarding the crime, the charges would be reduced to theft. In denying this claim for relief, the court observed:

> [Verge] did not provide any detailed information about this conversation with Detective Savage, did not attempt to secure Detective Savage as a witness, and produced no evidence to substantiate this claim. Additionally, [Verge] did not produce evidence that he offered testimony in another case or why the State's Attorney handling the case on May 10, 2011 should have known about such an agreement. In the absence of evidence or corroborating testimony that there was, in fact, an agreement to reduce [Verge's] sentence for his cooperation in an unrelated case, this court is unable to find any merit to this argument.

Post-Conviction Mem. Op. 9. Verge offers nothing further in the way of evidence to support his bald allegation that Savage made promises to him for leniency. He simply states, without more, that the State's Attorney should have known about it. Def.'s Reply 8. The post-conviction court's summation of the evidence as a finding of fact is entitled to deference and the conclusion is without error. Additionally, breach of contract is a state law claim and therefore the state court's conclusion is not contrary to federal law. The claim fails to provide a basis for federal habeas relief.

## **Conclusion**

The Petition for Writ of Habeas Corpus must be denied. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)(citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003).  Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C. § 2253(c)(2).

      A separate Order follows.

September 12, 2017
Date

/s/
Paul W. Grimm
United States District Judge